IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03660-PAB-NRN

DEMETRE DEUTH, and
LUIS PLASCENCIA,

      Plaintiffs,

v.

MARTIN MARIETTA MATERIALS, INC., incorporated as part of MARTIN MARIETTA,
CORPORATION,

      Defendant.

_____

# ORDER
_____

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 30] and Defendant's Motion to Exclude Evidence or, Alternatively, for Spoliation Jury Instruction [Docket No. 48].  "[A]s a matter of best practices, [a] district court should . . . rule[] on [a] motion [for spoliation sanctions] before, or in the process of, deciding summary judgment."  *Helget v. City of Hays, Kan.*, 844 F.3d 1216, 1227 (10th Cir. 2017).  Plaintiffs responded to both motions, Docket Nos. 42, 53, and defendant replied.  Docket Nos. 45, 55.

Plaintiffs filed this action on December 14, 2020, Docket No. 1, and filed an amended complaint on December 22, 2020.  Docket No. 7.  Plaintiffs each bring the following claims: (1) race-based discrimination in violation of 42 U.S.C. § 1981, (2) retaliation in violation of § 1981, (3) race-based discrimination in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and (4)

retaliation in violation of Title VII.  *Id.* at 13-18, ¶¶ 49-88.

# I. BACKGROUND[1]

Defendant Martin Marietta Materials, Inc. operates Riverbend Sand & Gravel

("Riverbend"), Docket No. 30 at 2, ¶ 1, which mines coarse particulate material for

construction projects.  Docket No. 7 at 4, ¶ 15.  Defendant hired plaintiff Demetre Deuth

in February 2019 and promoted him to the position of nightshift mechanic within a few

months.  Docket No. 30 at 2, ¶ 3.  Deuth is multi-racial or Black.  *Id.*  Defendant hired

plaintiff Luis Plascencia in 2013 and promoted Plascencia to "Lead Person" in 2019.

*Id.*, ¶ 2.  Plascencia is Hispanic.  *Id.*  Russ Brynjulson worked as a supervisor for

defendant at the Riverbend plant.  *Id.*, ¶ 1.  Jack Klingen worked for defendant as the

Riverbend plant operator.  *Id.*, ¶ 4.  Lashanda Rigsby worked as a Human Resources

manager.  *Id.*, ¶ 5.

In June 2017, Plascencia sent a letter to defendant's human resources

department wherein "he expressed concern that he was being discriminated against

because of his ethnicity and age."  Docket No. 42 at 11, ¶ 16; Docket No. 30 at 10, ¶ 43.

A supervisor promised Plascencia a promotion to "Lead"[2] in May 2016, but Plascencia

was not promoted until over a year later when he complained.  Docket No. 42 at 11,

¶ 16.  In November 2019, in a meeting during which employees were asked to bring

identifying documents like a social security card, Rigsby asked Plascencia if he brought

a real social security card, implying he had a fake card.  *Id.* at 9, ¶ 7.  In July 2019,

---

[1] The following facts are undisputed unless otherwise noted.
[2] Neither party defines what the "Lead Person" position consists of.  *See* Docket
No. 42 at 11, ¶ 16; Docket No. 30 at 2, ¶ 2.

Klingen made discriminatory remarks to Riverbend's office manager referencing Mexico as inferior to New Jersey.  *Id.*, ¶ 9.  In October 2019, a white foreman threatened Plascencia when he declined a request to stay at work late.  *Id.* at 10, ¶ 10.  In 2020, Plascencia and Brynjulson heard employees using the term "illegals."  Docket No. 30 at 10, ¶ 44.  Brynjulson told the employees to stop and, if they wanted to talk about politics, to do so after work.  *Id.*

Several Riverbend employees used racist slurs like the "n-word."[3]  Docket No. 42 at 7-8, ¶¶ 1-3.  Klingen used the n-word at least twice.[4]  *Id.* at 8, ¶ 4.  Defendant maintains a "Zero Tolerance" policy regarding harassment which states that termination is a discretionary consequence of harassment and may occur after a single violation of defendant's policy.[5]  *Id.* at 12, ¶ 21.  In October 2019, Deuth reported to Brynjulson that Klingen used the n-word.  Docket No. 30 at 10, ¶ 41.  Brynjulson spoke with Klingen, and Klingen did not use racial slurs after that conversation.  *Id.*

On November 20, 2019, Klingen shoved Deuth in the face with both of his hands.  *Id.* at 7, ¶¶ 25-26.  Deuth reported the incident.  *Id.*, ¶ 27.  Brynjulson collected witness statements and presented them to HR.  *Id.*  Rigsby reviewed the witness statements and interviewed Deuth and Klingen.  *Id.*  After the investigation, defendant suspended Klingen for three days.  *Id.* at 8, ¶ 29.

When employees at Riverbend work more than four feet off the ground in the quarry, they must use fall protection including a safety harness.  *Id.* at 4, ¶ 12.  On December

---

[3] The Court uses the term used by the parties in their briefing.
[4] The parties dispute how many times Klingen used the n-word.  Docket No. 42 at 8, ¶ 4; Docket No. 45 at 2, ¶ 4.
[5] Defendant admits it is disputed whether Klingen committed violations of the harassment policy that defendant was aware of.  Docket No. 45 at 5, ¶ 22.

11, 2019, defendant's harness vendor trained Riverbend employees on how to use safety harnesses.  *Id.*, ¶ 13.  On December 13, 2019, plaintiffs and two other employees used a safety harness as a toy.  *Id.*, ¶ 14.  The four employees attached the harness to a hoist and used it to lift two of the employees.  *Id.*  Neither the hoist nor the harness is intended to be used in this manner.  *Id.*  Plascencia took a video of the incident.  *Id.*, ¶ 15.  Plascencia simultaneously uploaded the video to Instagram.  *Id.*  The video showed plaintiffs violating multiple Riverbend safety rules.  *Id.* at 5-6, ¶ 18.

The vendor who provided the safety training saw the video on Plascencia's Instagram account and sent it to Brynjulson.  *Id.* at 6, ¶ 19.  Brynjulson sent the video to Rigsby.  *Id.*  Defendant warned employees that a willful violation of the basic safety rules supported disciplinary action up to and including termination.  *Id.* at 3, ¶ 9. Generally, after notice of a potential violation, Rigsby would investigate the incident and make recommendations on disciplinary actions based on her investigation.[6]  *Id.*, ¶ 10. Human Resources decides the level of disciplinary action that is necessary after receiving a recommendation.  *Id.*  After receiving the video, Rigsby and Brynjulson interviewed the participants in the video, including plaintiffs, on December 16, 2019.  *Id.* at 6, ¶ 20.  When Rigsby interviewed Plascencia, he stated he was giving defendant his two weeks notice to leave.  *Id.*, ¶ 21.  Rigsby told him to leave immediately.[7]  *Id.*

---

[6] Plaintiffs dispute that a typical part of Rigsby's investigations included collecting statements and deciding potential interviews.  Docket No. 42 at 3, ¶ 10.

[7] Plaintiffs claim that it is disputed whether Plascencia resigned or was fired. Docket No. 42 at 5, ¶ 21.  In his deposition, Plascencia testified that, during the interview with Rigsby, he told her, "here's my two weeks," meaning that he quit, and Rigsby responded that he was fired and was to leave the job immediately.  *Id.* (quoting Docket No. 42-1 at 22-23, 185:20-186:2).

After Plascencia's interview, Rigsby emailed upper management recommending that defendant fire the three other employees in the video.  *Id.*, ¶ 22.  Defendant accepted Rigsby's recommendation and terminated the remaining three employees, including Deuth.  *Id.* at 6-7, ¶¶ 22-23.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate

"specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### III.  ANALYSIS

Plaintiffs bring claims of race-based discrimination under Title VII and § 1981. Docket No. 7 at 13-14, 16-17, ¶¶ 49-59, 67-78.  Plaintiffs allege two theories of discrimination, one, that defendant treated them differently based on race and, two, that the race-based harassment they faced created a hostile work environment.  *Id.* at 13-14, 16, ¶¶ 53-54, 71-72.  Plaintiffs also bring retaliation claims under Title VII and § 1981, *id.* at 15, 17-18, ¶¶ 60-66, 79-88, based on theories of disparate treatment and a hostile work environment.  *Id.* at 15, 18, ¶¶ 63, 83.

Defendant moves for summary judgment on all of plaintiffs' claims.  *See generally* Docket No. 30.  Defendant refers to plaintiffs' claims as "race-based and retaliatory termination under Title VII and Section 1981" and "race-based and retaliatory harassment under Title VII and Section 1981."[8]  *Id.* at 11.  The Court construes defendant's arguments addressing plaintiffs' "harassment" claims as addressing plaintiffs' hostile work environment theories that are part of all four of plaintiffs' claims. The Court construes defendant's argument on plaintiffs' "termination" claims as

---

[8] Plaintiffs do not argue that defendant has incorrectly described or failed to capture all of plaintiffs' claims.  Docket No. 42 at 14-19.

addressing the theories of disparate treatment resulting from discrimination on the basis of race that plaintiffs plead in all four of their claims, specifically, plaintiffs' claims that they were wrongfully terminated.

## A.  Exhaustion

Defendant argues plaintiffs' Title VII hostile work environment claims fail because plaintiffs' EEOC charges "do not allege harassment based on race or retaliation," and so plaintiffs have failed to exhaust their claims.  *Id.* at 13-14.  The Court construes this as an argument that plaintiffs have failed to exhaust their Title VII hostile work environment claims.  Defendant does not distinguish between plaintiffs in its exhaustion argument. *See id.*  Plaintiffs respond that it is disputed whether their EEOC charges include claims of a hostile work environment and state that they are not limited to the exact scope of their EEOC charge.[9]  Docket No. 42 at 20 n.5.

For a Title VII claim, plaintiff must exhaust his or her administrative remedies for each individual discriminatory or retaliatory act.  *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).  In determining whether a plaintiff has exhausted his or her administrative remedies, the court must identify the scope of the allegations raised in the EEOC charge because a "plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the

---

[9] Although plaintiffs argue that there are disputes pertaining to the scope of their EEOC charges, plaintiffs do not dispute the content of the charges.  *See* Docket No. 42 at 20 n.5.  Exhaustion is considered an affirmative defense, and once defendant shows no disputed facts exist as to the defense, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact."  *Peak ex rel. Peak v. Cent. Tank Coatings, Inc.*, 606 F. App'x 891, 893 (10th Cir. 2015) (unpublished).  Plaintiffs do not identify disputes of material fact, such as what was in the EEOC charges or when they were filed.  Plaintiffs' argument that there is a dispute of material fact is unsupported.

charge of discrimination submitted to the EEOC." *Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). The failure to mark a particular box on a charge of discrimination creates a presumption that the charging party is not asserting claims represented by that box. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim. *Id*.

"To lay a factual foundation for a hostile work environment claim, [a plaintiff] must allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 668 (10th Cir. 2004) (unpublished) (citation omitted). For a hostile work environment claim, "[a]llegations are 'minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement' when they 'identif[y] the type of discrimination complained of, the alleged harasser, and an approximate time period.'" *Macias v. Sw. Cheese Co., LLC*, 624 F. App'x 628, 635 (10th Cir. 2015) (unpublished) (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)).

Plascencia's charge did not mark the box for discrimination based on race. Docket No. 30-20 at 2. Plascencia only marked the boxes labeled "retaliation" and "national origin." *Id.* Accordingly, there is a rebuttable presumption that Plascencia is not bringing a hostile work environment claim for discrimination based on race. *See Jones*, 502 F.3d at 1186. Plaintiffs argue Plascencia's charge encompasses a hostile work environment because Plascencia "mentions the racially motivated assault as well as

other 'egregious [mis]conduct.'"  Docket No. 42 at 20 n.5.  Plascencia's charge states

that "the employer did not discharge a White employee who had engaged in more

egregious misconduct on several occasions, including documented incidents of

exposing his genitals at work and physically assaulting a Black coworker" as an

example of why his termination was discriminatory.  Docket No. 30-20 at 2.

Plascencia's charge does not mention a hostile work environment and only describes

discrimination and retaliation as the basis for his termination.  *See id.*  In the box

"Date(s) Discrimination Took Place," Plascencia listed "Earliest" as December 16, 2019

and "Latest" as December 16, 2019.  *Id.*  Plascencia has not identified any "minimally

sufficient" allegations in his EEOC charge regarding a hostile work environment claim.

*Macias*, 624 F. App'x at 635.

    Plaintiffs argue they are not "strictly limited to the exact scope of the EEOC

charge."  Docket No. 42 at 20 n.5.  Plaintiffs are correct that the scope of a charge is

related to "the scope of the administrative investigation that can reasonably be expected

to follow from the discriminatory acts alleged in the administrative charge."  *Jones*, 502

F.3d at 1186 (emphasis omitted).  But plaintiffs fail to show how the charge could

reasonably have led to an administrative investigation of a hostile work environment.

The Court finds that the scope of the charge does not include a hostile work

environment and will grant summary judgment to defendant on Plascencia's Title VII

hostile work environment claims.

    Deuth's EEOC charge checks the boxes for discrimination based on race, color, and

retaliation.  Docket No. 30-7 at 2.  He claims that, in November 2019, the "Plant

Operator" physically assaulted him, yet was not terminated, but defendant terminated

Deuth in December 2019, demonstrating that defendant held Deuth to a different standard than the Caucasian plant operator based on Deuth's race and color.  *Id*. Identifying Klingen (the plant operator), a physical assault, and the disparate discipline would reasonably cause an administrative investigation of race and color discrimination based on the assault and termination, but plaintiffs provide no explanation why the charge describing the assault, the investigation of the assault, and Deuth's termination would lead to an investigation of a hostile work environment.  The Court finds that the scope of Deuth's charge is limited to his assault and termination and will grant summary judgment to defendant on Deuth's Title VII hostile work environment claim.

## B.  Race-Based Discrimination

Plaintiffs make claims of race-based discrimination in violation of § 1981 and Title VII on three grounds: (1) wrongful termination, (2) defendant's failure to promote Plascencia, and (3) hostile work environment.  Docket No. 30 at 11-17.

Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  *See* 42 U.S.C. § 2000e-2(a)(1).  Section 1981 gives "all persons . . . the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws."  § 1981(a).  The standards for evaluating the claims are the same.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  Disparate treatment claims can be made out either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set

forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."[10]  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015).  Under *McDonnell Douglas*, plaintiff must first establish a *prima facie* case of race or national origin discrimination.  *Kendrick*, 220 F.3d at 1226.  Next, the employer must "articulate some legitimate, nondiscriminatory reason for its employment action."  *Id.*  If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's "justification is pretextual."  *Id.*

### 1. Wrongful Termination

#### a. Prima Facie Case

To make out a *prima facie* case of race-based disparate treatment, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) he was treated less favorably than similarly-situated employees not in the protected class.  *See, e.g., Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) (Title VII claim); *Sydney v. ConMed Elec. Surgery*, 275 F. App'x 748, 751-52 (10th Cir. 2008) (unpublished) (listing the same elements for § 1981 claims).

Defendant argues Plascencia cannot make out the second element of a *prima facie* case of wrongful termination because he resigned rather than being fired.  Docket No. 30 at 11.  Plaintiffs argue that, given Plascencia was fired immediately after he resigned, he suffered an adverse employment action because he lost "severance," which may refer to two weeks of pay.  Docket No. 42 at 14-15.  It is undisputed that, during the December 16, 2019 interview with Rigsby about the harness incident,

---

[10] Defendant states that plaintiffs' race discrimination claims should be evaluated under the *McDonnell Douglas* framework; plaintiffs do not challenge this assertion. Docket No. 30 at 11; *see* Docket No. 42 at 18.

Plascencia gave his two weeks' notice and then Rigsby told him to leave immediately. Docket No. 30 at 6, ¶¶ 20-22; Docket No. 42 at 5, ¶¶ 20-22.

An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004)).  In *Rodriguez v. Wet Ink, LLC*, No. 08-cv-00857-MSK-CBS, 2012 WL 1079006, at *8 (D. Colo. Mar. 30, 2012), the plaintiff indicated to her employer that she was resigning and that her resignation would be effective in two weeks.  Although the record was unclear, the court assumed that plaintiff refused to sign a waiver or release to be paid for two weeks wages and therefore defendant terminated her employment immediately.  *Id.*  The court ruled that her immediate termination after plaintiff gave two weeks' notice constituted an adverse employment action, but that plaintiff's damages were limited to the wages she would have received if her resignation had not been accepted early.  *Id.* at *9.

Defendant argues that this case is distinguishable from *Rodriguez* because Plascencia cannot show he would not have been terminated immediately, like Deuth and the other two employees in the video.  Docket No. 45 at 7.  The Court agrees. Plascencia provides no reason to believe that he would have been treated any differently than Deuth or the two other employees in the video, each of whom was immediately terminated.  However, Plascencia nevertheless suffered an adverse employment action because, despite resigning, he otherwise would have had two

weeks' pay.  Accordingly, the Court will decline to grant summary judgment to defendant on the basis of Plascencia's resignation.[11]

### b.  Pretext

Defendant's articulated non-discriminatory reason for terminating Deuth and Plascencia is that they violated defendant's safety rules, as shown in the video.  Docket No. 30 at 6-7, 11-13, ¶¶ 22-23.  Plaintiffs argue that disputed issues of material fact exist regarding defendant's motivation for firing plaintiffs.  Docket No. 42 at 15-16.  It is undisputed that plaintiffs violated defendant's safety rules.  Docket No. 30 at 5, ¶ 18.  Plaintiffs, however, claim that defendant's failure to discipline Klingen for violations of the "Zero Tolerance" harassment policy demonstrate that termination was too severe of a punishment for plaintiffs and was predicated at least partially on race-based discrimination.  Docket No. 42 at 16-17.

A plaintiff can demonstrate pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002) (citations omitted).  In the Tenth Circuit, "an inference of discrimination" can be shown through evidence "that the employer treated similarly situated employees more

---

[11] Plaintiffs argue Plascencia can show an adverse action based on a constructive discharge theory.  Docket No. 42 at 15.  "A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign."  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).  Plaintiffs, however, identify no facts and develop no argument demonstrating that defendant forced Plascencia to resign for improper reasons.

favorably."  *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800-01 (10th Cir. 2007)).  "[E]vidence that a similarly situated employee was treated differently may aid the plaintiff in satisfying its burden to establish a prima facie case of discrimination, or, in other circumstances, may raise an inference of pretext in the third stage of the *McDonnell Douglas* burden-shifting method of proof."  *PVNF*, 487 F.3d at 802 (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173-74 (10th Cir. 2005)).

Individuals are considered "similarly situated" for purposes of Title VII "when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'"  *Id.* at 801 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).  To show disparate treatment, a plaintiff must show that he was similarly situated to his comparators in "all relevant respects," and courts traditionally "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."  *McGowan*, 472 F.3d at 745 (citation omitted).  "The burden is on the plaintiff to demonstrate he is similarly situated to the employees to whom he is comparing himself."  *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000).

It is undisputed that violations of defendant's zero tolerance policy on harassment can result in termination after one offense.  Docket No. 42 at 12, ¶ 21.  Defendant's safety policy states that willful safety violations could result in termination after one offense.  Docket No. 30 at 3, ¶ 9.  Other than pointing out that both types of violations could result in termination, plaintiffs produce no evidence that the company treats

infractions based on harassment and safety in the same way.  *See* Docket No. 42 at 16.
"A company must be allowed to exercise its judgment in determining how severely it will
discipline an employee for different types of conduct."  *Kendrick*, 220 F.3d at 1233.
"Individuals are considered 'similarly-situated' when they deal with the same supervisor,
are subjected to the same standards governing performance evaluation and discipline,
and have engaged in conduct of 'comparable seriousness.'"  *PVNF*, 487 F.3d at 801
(quoting *McGowan,* 472 F.3d at 745).  Plaintiffs do not show that they are similarly
situated to Klingen.  Plaintiffs were not terminated for violating the harassment policy,
neither plaintiff was employed as a plant manager like Klingen was, plaintiffs do not
show that plaintiffs and Klingen shared a supervisor, and plaintiffs do not identify any
facts to show defendant had comparable evidence of the violation such as a video of
Klingen shoving Deuth.  Plaintiffs fail to sustain their burden of proof to show how they
are similarly situated.

    Next, plaintiffs argue that the fact defendant terminated plaintiffs instead of
suspending them supports a showing of pretext because it demonstrates defendant was
motivated at least in part by race, since a single safety violation, in plaintiffs' view,
cannot justify termination.  Docket No. 42 at 16-17.  Plaintiffs, however, fail to identify
any facts that show that one safety violation comparable to plaintiffs' safety violation
would not warrant termination based on company practice or policy.  Although plaintiffs
argue that defendant did not apply its safety policy correctly, "[t]he relevant inquiry is not
whether the employer's proffered reasons were wise, fair or correct, but whether it
honestly believed those reasons and acted in good faith upon those beliefs."  *Rivera v.
City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (alteration omitted); *see*

*also Kendrick*, 220 F.3d at 1231 ("[A] challenge [to] pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff.").  "[T]he factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions – simply disbelieving the employer is insufficient."  *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).

The Court finds that plaintiffs have not presented facts from which a reasonable jury could conclude that defendant's decision to terminate them was so meritless as to call into question defendant's actual motivation.  *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (finding no evidence "of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons") (citation omitted).  The facts in the record before the Court do not create an inference that defendant's termination of plaintiffs was motivated by race discrimination.  Plaintiffs do not identify any other similarly-situated employees who violated safety rules, but were not terminated, and fail to demonstrate that defendant did not believe its proffered reason for terminating plaintiffs.  *See* Docket No. 42 at 12-14, 15-17, ¶¶ 18-26.  As plaintiffs fail to establish that defendant's reason for terminating plaintiffs was pretext for discrimination, defendant is entitled to summary judgment on plaintiffs' discrimination claims based on their termination.  *See Harp v. Dep't of Hum. Servs., Colo. Mental Health Inst. at Pueblo*, 932 F. Supp. 2d 1217, 1228 (D. Colo. 2013)

(dismissing discrimination claim on summary judgment where plaintiff failed to show pretext).

### 2. *Failure to Promote*

Defendant argues that Plascencia's alternative claim of race-based discrimination, predicated on a failure to promote Plascencia, fails because Plascencia cannot establish the elements of a *prima facie* case.  Docket No. 30 at 13.  Plascencia argues that he can maintain a failure to promote claim based on national origin because he was told he would be promoted and given extra responsibilities, but he was not promoted or compensated for his new responsibilities for over a year.  Docket No. 42 at 18.  Plascencia, however, does not bring any national origin claims in the complaint.  Moreover, plaintiffs have not "sought leave to file an amended complaint, . . . asked that their response to summary judgment be treated as a request to amend, [or] filed an amended complaint."  *Fuqua v. Lindsey Mgmt. Co. Inc.*, 321 F. App'x 732, 735 (10th Cir. 2009) (unpublished).  Plaintiffs provide no argument that Plascencia should be allowed to amend the complaint to include a failure to promote claim based on national origin and do not argue that Plascencia can support a failure to promote claim based on race.  Docket No. 42 at 18.  The Court will grant summary judgment to defendant on Plascencia's failure to promote claim.

### 3. *Hostile Work Environment*

Despite dismissing the portions of plaintiffs' first and third claims relating to a hostile work environment based on a failure to exhaust under Title VII, plaintiffs' hostile work environment claims under § 1981 remain.  Defendant argues that neither plaintiff can show severe or pervasive race-based harassment and therefore defendant is entitled to

summary judgment on plaintiffs' claims based on a hostile work environment.  Docket No. 30 at 14.

"To survive summary judgment on a racially hostile work environment claim, a plaintiff must show 'that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'"  *Chavez v. New Mexico*, 397 F.3d 826, 831–32 (10th Cir. 2005) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).  "'[A] few isolated incidents of racial enmity' or 'sporadic racial slurs'" are insufficient to satisfy this burden.  *Id.* at 832 (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412–13 (10th Cir. 1987)).  "Instead, there must be a steady barrage of opprobrious racial comments."  *Id.* (citation omitted).  In determining whether conduct is sufficiently severe or pervasive, the Tenth Circuit considers: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance."  *Holmes v. Regents of Univ. of Colo.*, 176 F.3d 488 (Table), 1999 WL 285826, at *7 (10th Cir. May 7, 1999) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee, does not sufficiently affect the conditions of employment to implicate Title VII."  *Harris*, 510 U.S. at 21 (internal quotation marks and citations omitted).  Rather, in making this hostile work environment determination, a court must "consider the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position."  *Herrera v. Lufkin Indus. Inc.*, 474 F.3d

675, 680 (10th Cir. 2007).  A hostile work environment is one that a reasonable person would find hostile or abusive.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

A hostile work environment claim may be based on either severity or pervasiveness. *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008).  Those grounds "are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute."  *Id.* (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

Defendant argues neither plaintiff identifies sufficient facts to show pervasive or severe harassment.  Docket No. 30 at 14-17.  Plaintiffs argue that the facts they identify "constitute a workplace 'permeated with discriminatory intimidation, ridicule, and insult.'" Docket No. 42 at 20.  Defendant separates "anti-Hispanic conduct" alleged by Plascencia and "anti-Black conduct" alleged by Deuth, Docket No. 30 at 14-15, a distinction that is not present in the complaint.  Docket No. 7 at 6-13, ¶¶ 24-48. Defendant argues that neither plaintiff can show severe or pervasive harassment towards members of each of plaintiff's respective races, but does not explain why Deuth cannot use examples of "anti-Hispanic conduct" to support his claims and Plascencia cannot use examples of "anti-Black conduct" to support his claims.  Docket No. 30 at 14-15.  The Tenth Circuit has ruled that "that derogatory comments need not be directed at or intended to be received by the victim to be evidence of a hostile work environment.  The totality of the circumstances is the touchstone of a hostile work environment analysis.  Evidence of a general work atmosphere, including evidence of

harassment of other racial minorities may be considered in evaluating a claim, as long as the plaintiff presents evidence that [the plaintiff] knew about the offending behavior." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 959 (10th Cir. 2012) (internal citations, brackets, and quotations omitted).  The Court will examine each plaintiff's claims of a hostile work environment based on the harassment that Plascencia and Deuth were aware of.

The Court finds that Deuth has identified sufficient facts to demonstrate harassment severe enough to survive summary judgment based on Klingen's physical assault of Deuth and Klingen's use of the n-word.  First, it is undisputed that Deuth heard Klingen use the n-word twice.[12]  Docket No. 42 at 8, ¶ 4; Docket No. 45 at 2, ¶ 4.  Defendant argues that this conduct "—although objectionable—does not establish unlawful harassment."  Docket No. 30 at 16.  In support, defendant cites a case in which the Tenth Circuit ruled that two racially offensive remarks, without any other allegations of racial discrimination, were insufficient to establish a hostile work environment.  *Id.* at 16-17 (citing *Chavez*, 397 F.3d at 832).  That case is distinguishable.  The Tenth Circuit has observed that "perhaps no single act can more quickly alter the conditions of

---

[12]  Defendant argues that Deuth's use of the n-word demonstrates that Klingen's use would not cause an objectively hostile work environment.  Docket No. 30 at 17.  Plaintiffs respond by arguing that Deuth used the n-word with a soft "-a" suffix as opposed an "-er" suffix.  Docket No. 42 at 4, ¶ 17b. n.2.  Plaintiffs argue that the suffix that is used determines whether the n-word is an obscenity or a racial slur and that Deuth's use was the former while Klingen's use was the latter.  *Id.*  The Court declines to evaluate this argument at the summary judgment stage.  First, defendant provides no argument that Deuth's use of the n-word with an "-a" suffix is appropriately weighed at the summary judgment phase for a hostile work environment claim.  Second, when confronted with the same distinction plaintiffs raise, the Tenth Circuit ruled that it was "confident that this is the kind of question that should be left to the judgment of a reasonable jury" as opposed to being determined at the summary judgment phase. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1230 (10th Cir. 2015).

employment than the use of an unambiguously racial epithet such as [the] 'n[-word]' by a supervisor.  This single incident might well have been sufficient to establish a hostile work environment."  *Lounds*, 812 F.3d at 1230 (quotations omitted) (quoting *Ayissi–Etoh v. Fannie Mae,* 712 F.3d 572, 577 (D.C. Cir. 2013)).

Next, it is undisputed that Klingen assaulted Deuth by shoving him in the face with both of his hands.  Docket No. 30 at 7, ¶ 26.  A white employee who was speaking to Deuth at that time was not assaulted.  Docket No. 42 at 10, ¶ 11.  Defendant argues that Deuth "did not connect race to the altercation," Docket No. 30 at 16; however,

> [c]onduct that appears [racially]-neutral in isolation may in fact be [race]-based, but may appear so only when viewed in the context of other [race]-based behavior.  Thus, when a plaintiff introduces evidence of both [race]-based and [race]-neutral harassment, and when a jury, viewing the evidence in context, reasonably could view all of the allegedly harassing conduct . . . as the product of [racial] hostility, then it is for the fact finder to decide whether such an inference should be drawn.

*Hernandez*, 684 F.3d at 960 (quoting *Chavez*, 397 F.3d at 833) (alterations in original).  Based on Klingen's use of the n-word in front of Deuth, a reasonable jury could infer Klingen's physical assault of Deuth was racially motivated.  Based only on Klingen's use of slurs and his physical assault of Deuth, plaintiffs have identified enough evidence that Deuth experienced sufficiently severe harassment for his claim to survive summary judgment.[13]  The Court will not grant summary judgment on the portion of Deuth's race-based discrimination claims under § 1981 that are based upon a hostile work environment.

---

[13] Plaintiffs do not make clear what alleged acts of harassment aimed at other employees Deuth witnessed.  *See* Docket No. 42 at 7-12, ¶¶ 1-17.  Because the harassment he faced alone is severe enough to sustain his claim, the Court need not evaluate acts of harassment directed at other employees.

Defendant argues Plascencia cannot show severe or pervasive harassment.  Docket No. 30 at 14-15.  Defendant identifies the following as Plascencia's evidence of harassment: "(1) Klingen would say 'illegals' should not remain in the country; (2) Rigsby allegedly once asked whether Plascencia brought his 'real Social;' (3) 'workers of color' were denied lunch breaks; and (4) 'workers of color' had to work outside more often." *Id.* at 14.  Defendant argues the sum of these events "does not establish a workplace 'permeated with discriminatory intimidation, ridicule, and insult.'" *Id.* at 15.  Plaintiffs do not address Plascencia's hostile work environment claim individually, stating only that "[t]here are enough facts in [defendant's statement of undisputed facts and plaintiffs' statement of additional disputed facts] to constitute a workplace 'permeated with discriminatory intimidation, ridicule, and insult.'"  Docket No. 42 at 20.

In addition to the four examples of harassment that defendant identifies, plaintiffs' statement of disputed facts claims that defendant was aware that Plascencia was threatened with violence for declining a request to work late, *id.* at 10, ¶ 10, and that Plascencia was exposed to a co-worker texting the n-word to "'essentially the entirety' of the Riverbend facility." *Id.* at 7-8, ¶ 1.[14]

It is undisputed that Plascencia and Brynjulson heard another employee use the term illegals.[15]  Docket No. 30 at 10, ¶ 44.  Plaintiffs, however, only demonstrate that Plascencia heard the term one time.  Plaintiffs do not argue that this instance is severe

---

[14] The Court will decline to consider any allegations of harassment supported only by evidence recovered from Plascencia's phone as plaintiffs fail to show that defendant was aware of those text messages.

[15] Plaintiffs claim that white workers regularly used the term, but they do not cite any evidence that supports this fact or any evidence that Plascencia was present when white workers used the term illegals.  See Docket No. 42 at 9, ¶ 7 (citing Docket No. 42-1 at 15, 81:5-11).

enough to constitute severe race-based harassment or show Plascencia was exposed to pervasive use of the term.

Next, defendant argues that Rigsby asking Plascencia for his "real Social," *id.*, ¶ 45, is a single comment that is not enough to demonstrate a hostile work environment. *Id.* at 15. One comment is insufficient to show "a steady barrage of opprobrious racial comments." *Chavez*, 397 F.3d at 832 (citation omitted). Plaintiffs also identify a meeting where Klingen made derogatory remarks about Mexico, Docket No. 42 at 9, ¶ 9, but do not state that Plascencia heard this remark. Plaintiffs do not identify instances of other race-based comments Plascencia was aware of that are supported by admissible evidence in the record.

Defendant argues that Plascencia's claim that workers of color were denied lunch breaks should not be considered because Plascencia is not pursuing a distinct claim of harassment based on color[16] and because Plascencia's deposition testimony contradicts his assertion in an interrogatory response that anyone was treated differently regarding lunch breaks. Docket No. 30 at 15. It is undisputed that "'[e]verybody was pretty much treated the same' regarding lunch breaks." *Id.* at 10, ¶ 42; Docket No. 42 at 7, ¶ 42. Accordingly, this does not present evidence of race-based harassment.

It is undisputed that Plascencia was threatened with violence by a white foreman, Docket No. 42 at 10, ¶ 10, but there is no evidence that this act was connected to race.

---

[16] Plaintiffs define "[w]orkers or [p]ersons of color" as "non-white workers and persons." Docket No. 42 at 7, ¶ 43 n.3. This is consistent with a race-based claim, not a color-based claim, and the Court need not address defendant's argument that plaintiffs are attempting to bring a claim based on color.

In sum, the harassment Plascencia heard or saw was one instance where Rigsby asked for his "real Social," hearing another employee use the term illegals on one occasion, Deuth's physical assault, and the use of the n-word in text messages by Riverbend employees.  Plaintiffs fail to show a disputed issue of material facts exists as to whether these incidents, when considered in combination, would be sufficient to "alter the conditions of [his] employment and create an abusive working environment," *Hernandez*, 684 F.3d at 960, even if "harassment of other racial minorities may be considered in evaluating a claim."  *Id.* at 959.  The Court will grant summary judgment to defendant on Plascencia's remaining hostile work environment claim.

### 4.  Employer Liability

Defendant argues plaintiffs cannot show employer liability for their hostile work environment claims.  "[T]he record must support both an inference of a hostile work environment and a basis for employer liability."  *Faragalla v. Douglas County Sch. Dist.*, 411 F. App'x 140, 154 (10th Cir. 2011) (unpublished).  An "employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998).  As Plascencia's claims have been dismissed, the Court will only evaluate defendant's liability for Deuth's hostile work environment claim.

It is disputed whether Klingen had supervisory authority over Deuth, Docket No. 30 at 2, ¶ 4; Docket No. 42 at 2, ¶ 4, and as described above, Klingen played a significant role in the harassment Deuth faced.  Liability for a hostile work environment "arises only if the employer fails to take adequate remedial and preventative responses to any

actually or constructively known harassment." *Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057, 1069 (10th Cir. 2007).  Defendant argues that Deuth cannot show employer liability because, in response to Deuth's complaint, Brynjulson promised to, and did, speak to Klingen about using the n-word in October 2019.  Docket No. 30 at 18.  It is undisputed that Klingen stopped using racial slurs after Brynjulson spoke with him.  *Id.* at 10, ¶ 41.  The Court finds that Klingen's use of the n-word is not sufficient to establish defendant's liability.

Defendant argues that "any other allegation of harassment" Deuth experienced was not connected to racial animus, presumably referencing Klingen's assault on Deuth.  *Id.* at 18.  For the reasons discussed above, the Court declines to find that it is undisputed Klingen's assault was not racially motivated.  It is, however, undisputed that Klingen was suspended for three days after shoving Deuth.  *Id.* at 8, ¶ 29.  Deuth does not argue that this was insufficient to address Klingen's behavior or that Klingen took any action harassing Deuth after his suspension.  Plaintiffs argue Klingen was "untouchable," Docket No. 42 at 20, but do not identify harassment of Deuth by Klingen that defendant was aware of that defendant failed to address.  As discussed above, whereas Deuth only identifies Klingen's use of the n-word and his assault on Deuth, defendant has shown evidence that defendant addressed both incidents.  Accordingly, the Court will grant summary judgment on Deuth's hostile work environment claim.

### C.  Retaliation

Plaintiffs claim that they engaged in protected speech by reporting discrimination to defendant and that defendant terminated plaintiffs in retaliation for their complaints.  Docket No. 7 at 15, ¶ 62.  Defendant argues that plaintiffs cannot establish their

retaliation claims because they have not connected any harassment to protected speech.  Docket No. 30 at 18-20.  Defendant does not specifically address plaintiffs' retaliation claims that are based upon wrongful termination, focusing instead on plaintiffs' hostile work environment claims.  *See id.*  Plaintiffs' response only addresses their retaliation claims that relate to wrongful termination, stating that "[t]he temporal proximity between Plaintiffs' final complaint in a series of recent complaints and incidents against and involving white Riverbend workers, and Defendant's firing them less than one month later is undeniable."  Docket No. 42 at 18.

The same *McDonnell Douglas* burden-shifting framework that applies to discrimination claims applies to retaliation claims.  *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).  To establish a *prima facie* Title VII retaliation claim, a plaintiff must show: (1) engagement in activity protected under Title VII, (2) a "materially adverse" employment action, and (3) a causal connection between the protected activity and the materially adverse employment action.  *Id.*  For § 1981 retaliation claims, "a plaintiff establishes a *prima facie* case by showing that: (1) she engaged in protected opposition to discrimination; (2) she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action."  *Perry v. Woodward*, 199 F.3d 1126, 1141 n.12 (10th Cir. 1999) (citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 (10th Cir. 1998)).

Plaintiffs fail to respond to defendant's argument that plaintiffs' lack any evidence that connects the harassment they allege in their hostile work environment claims to any protected speech.  *See* Docket No. 42 at 17-18.  The Court agrees with defendant that

plaintiffs raise no genuine issue of disputed fact showing a causal connection. Accordingly, the Court will grant summary judgment to defendant on plaintiffs' retaliation claims to the extent that such claims are predicated on a hostile work environment.

Plaintiffs argue their retaliation claims can be supported by their wrongful termination claims. Docket No. 42 at 18. However, like a claim of discrimination based on wrongful termination, a claim for retaliation based on wrongful termination requires that plaintiff make a showing of pretext if the employer offers a non-discriminatory basis for the action, *Est. of Bassatt v. Sch. Dist. No. 1 in the City & Cnty. of Denver*, 775 F.3d 1233, 1238 (10th Cir. 2014), which the Court finds plaintiffs have not shown. Even assuming plaintiffs could make out a *prima facie* case of retaliation based on wrongful termination, for the reasons stated above, the Court finds that plaintiffs have not introduced sufficient evidence to show defendant's reason for terminating plaintiffs was pretextual. Accordingly, plaintiffs' claims for retaliation based on wrongful termination will be dismissed. Plaintiffs argue that the temporal proximity between their protected activities and their termination can constitute a finding of pretext, but the Tenth Circuit has recognized that while temporal proximity can establish causation for a *prima facie* case of retaliation, *see Singh*, 936 F.3d at 1043, temporal proximity alone is insufficient to show pretext and defeat summary judgment. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004). The Court will grant defendant's motion on all of plaintiffs' retaliation claims.[17]

**IV. CONCLUSION**

---

[17] As all of plaintiffs' claims are dismissed, defendant's motion for spoliation sanctions, Docket No. 48, is now moot.

It is therefore

**ORDERED** that Defendant's Motion to Exclude Evidence or, Alternatively, for

Spoliation Jury Instruction [Docket No. 48] is **DENIED as moot**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 30] is

**GRANTED**.  It is further

**ORDERED** that the amended complaint [Docket No. 7] is dismissed with prejudice.

It is further

 **ORDERED** that, within 14 days of the entry of this Order, defendant may have its

costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed

DATED January 3, 2023.

BY THE COURT:

Philip A. Brimmer
Chief United States District Judge

28